UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GARY EBERT | CIVIL NO.: 17-0925 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| PASCAL LEVY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are Motions to Dismiss by Defendants Hirant Manakyan, Herman Manakyan, Fusion Sports, S.A.R.L.[1] ("Fusion") (collectively, "Fusion Defendants"), and Pascal Levy ("Levy"). [Record Documents 7 and 11]. Plaintiff Gary Ebert ("Ebert"), appearing pro se, has filed an opposition, and the Fusion Defendants have filed a reply. [Record Documents 13, 15, and 18]. Levy, appearing pro se, the Fusion Defendants, and Ebert have separately filed affidavits in response to the Court's request for additional information to clarify Defendants' relationships in order to determine whether the Court may properly exercise personal jurisdiction. [Record Documents 29–31]. The Fusion Defendants have objected to Ebert's affidavit. [Record Document 32]. Having considered the foregoing as well as the remainder of the record, the Court **GRANTS** the motions to dismiss. The pending motion to disqualify counsel filed by Ebert [Record Document 13] is **DENIED AS MOOT**.

---

[1] "SARL is the French abbreviation for a term used to describe a private company similar to an American limited liability company." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 924 n.2 (11th Cir. 2007).

1

## I. Background

### A. Factual Background

Ebert is an international basketball agent living in Louisiana who represented players Mike Smith ("Smith"), Brandon Spann ("Spann"), and Ryan Moss ("Moss") (collectively, "the Players"). [Record Document 31 at 2]. In 2005, Ebert and Levy, a French citizen living in France, entered into an oral agreement ("2005 Agreement") whereby Levy would assist Ebert in placing the Players on French basketball teams in exchange for a share of the agency fees. [Record Documents 1-13 at 6, 30 at 1, 31 at 1–2]. Following the Players' placement on teams, Levy allegedly failed to pay Ebert's share of certain fees and failed to diligently collect others. [Record Document 1-13 at 6–7]. Beginning in 2006, Ebert repeatedly demanded that Levy comply with his obligations. [Record Documents 1-13 at 7 and 31 at 3]. In 2012, Levy became an employee and partial owner of Fusion, a French sports management company founded by Hirant Manakyan, a French resident and citizen. [Record Documents 1-6 at 12 and 29-1 at 3–4]. Herman Manakyan, a Maryland resident and United States citizen, originally worked as a consultant for Fusion, but has since become a partial owner. [Record Document 29-1 at 5–6]. Ebert alleges that the Fusion Defendants share Levy's liability as a result of his association with the company. [Record Document 1-13 at 7].

### B. Procedural History

Ebert filed an "Original Petition for Damages" in the 26th Judicial District Court of Louisiana against "Pascal Levy, Individually, and d/b/a 5A's and Fusion Sport," alleging breach of contract, conversion, tort fraud, and breach of fiduciary duty. [Record Document 1-2]. Ebert prayed for $11,134.99 plus interest, attorney fees, and "general damages for defendants' fraud and [b]reach

of fiduciary duty." [*Id.* at 10–11]. Although maintaining that it had not been properly named as a defendant, Fusion filed exceptions of lack of personal jurisdiction, insufficient citation and service of process, no cause of action, and prescription. [Record Document 1-6]. At a show cause hearing, the state court denied the exceptions of insufficient citation and service of process and granted the exception of a lack of personal jurisdiction, giving Ebert fifteen days to amend his petition. [Record Document 1 at 2]. The court also entered a preliminary default against Levy. [Record Document 9-1 at 18].[2]

Ebert also amended his petition, naming Levy, Herman Manakyan, Hirant Manakyan, and Fusion as defendants, adding claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A §§ 1961–1968 (West 2015 & Supp. 2017), and its Louisiana equivalent, La. Stat. Ann. §§ 15:1351–1356 (2015 & Supp. 2018), and increasing his monetary demand to $2,225,881.99 and "actual damages in an amount to be proven at trial, plus treble damages, attorneys' fees, interest, and costs," [Record Document 1-13 at 2, 11, 14]. In response, the Fusion Defendants filed a notice of removal. [Record Document 1]. Ebert then filed a demand for jury trial, the transcript from the show cause hearing, and the state court order setting a hearing on the default judgment. [Record Documents 6 and 9]. The Fusion Defendants again moved to dismiss for lack of personal jurisdiction, for failure to state a claim on which relief can be granted, and for insufficient process and service of process. [Record Document 7]. Levy filed an answer incorporating what the Court construes as a motion to dismiss on grounds of prescription,

---

[2] Ebert incorrectly believes that the state court entered a default judgment against Levy. When seeking to confirm the default, Ebert submitted a proposed judgment. [Record Document 9-1 at 2]. Although the state court issued its order by writing upon the proposed judgment, the handwritten order denied default judgment and set the matter for hearing. [*Id.* at 3]. Because the action was removed to this Court, the state court neither held the hearing nor confirmed the default.

3

lack of personal jurisdiction, and insufficient service of process. [Record Document 11]. Ebert opposed Levy's motion to dismiss, moved to disqualify the Fusion Defendants' counsel, and moved for additional time to replead. [Record Documents 13 and 18]. The Court denied the motion for additional time and ordered Ebert to file a Civil RICO case statement. [Record Document 16]. Ebert filed his statement, which names as defendants Levy, the Fusion Defendants, and "Cook Yancey King and Galloway APLC." [Record Document 22].[3] Confronted with insufficient information to accurately assess its personal jurisdiction, the Court ordered the parties to submit affidavits or other authenticated evidence addressed to jurisdictional matters. [Record Document 24]. The parties have complied. [Record Documents 29–31].

### C. Ebert's Allegations

Because there are substantial disagreements about the facts of the case, the Court will outline Ebert's allegations in detail. According to Ebert, he and Levy were to share any agency fees earned on contracts between the Players and their French basketball teams. [Record Document 1-13 at 6]. Although Levy made a partial payment of Ebert's share of the agency fees for Moss in March or April 2006, [Record Document 31 at 2], it is unclear from the record whether Levy made any payments in relation to Smith or Spann. Additionally, Ebert alleges that Smith's club incurred "mandatory 7% monthly late fees" that Levy failed to collect. [Record Document 1-13 at 6]. On June 1, 2006, Ebert sent Levy an invoice, following up on June 27, 2006 with an offer to compromise the matter. [*Id.* at 6–7].

According to Ebert, in 2005 Levy was "doing business as" 5A's ("5A's");[4] subsequently, he

---

[3] The Court notes that Cook, Yancey, King & Galloway has never been named as a defendant in an amended complaint.

[4] Levy formed 5A's Basket Ball S.A.R.L. in 2002. [Record Document 30 at 3].

4

and the Manakyans formed Fusion to "take over the representation activities of 5A's." [*Id.* at 2–3, 7]. Levy then allegedly used money that he should have paid to Ebert under the 2005 Agreement to travel and recruit basketball players for himself and Fusion. [*Id.* at 12]. Ebert seeks not only the amount that he was owed under the 2005 Agreement, but also "any profits realized by Defendants through the use of Plaintiff's funds in any other business ventures." [*Id.* at 14].

Ebert also alleges that Defendants violated RICO via "fraudulent inducement by Defendants of Plaintiff to use Plaintiff's resources and subornation or purjury [sic], and the related fraudulent conversion of Plaintiff's converted funds." [*Id.* at 11]. Effectively, Ebert alleges that Levy breached the 2005 Agreement in concert with the Fusion Defendants through the use of interstate mail or wire communications. [*Id.* at 10–11]. In his RICO case statement, Ebert expands his allegations to include the participation of a variety of attorneys, including counsel for the Fusion Defendants and counsel who represented Ebert in other cases; he alleges that these attorneys conspired to "self-deal," engage in conflicting interest representations, and file false pleadings and other documents. [Record Document 22].

## II. Law and Analysis

### A. 12(b)(2) Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a motion to dismiss for lack of personal jurisdiction. At trial, a plaintiff must prove personal jurisdiction over each defendant by a preponderance of the evidence. *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 584–85 (5th Cir. 2014) (citing *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 917 (5th Cir. 1987)). However, to survive a motion to dismiss, a plaintiff need only establish a prima facie case. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir.

2008) (citing *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 384 (5th Cir. 1989); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). Although a court must accept a plaintiff's uncontroverted jurisdictional allegations as true, it need not "credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998)). Moreover, a court may accept affidavits or other recognized forms of discovery to clarify a difficult question of jurisdiction. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). If a defendant's affidavit contradicts any of the plaintiff's jurisdictional allegations, a court evaluates whether the plaintiff has stated a prima facie case by examining her "nonconclusory allegations supported by admissible evidence." *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) (per curiam). Applying this standard, Ebert has the burden of stating a prima facie case. Because Defendants' evidence contradicts some of Ebert's allegations, the Court must evaluate his prima facie case on the basis of his nonconclusory and supported allegations.

**B. Law of Personal Jurisdiction**

This Court may exercise personal jurisdiction to the same extent as a Louisiana court. *Walk Haydel*, 517 F.3d at 242 (citing *Access Telecomm., Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999)). Louisiana's long-arm statute authorizes personal jurisdiction to the maximum extent allowed by the Due Process Clause. *Id.* at 242–43 (citing *A & L Energy, Inc. v. Pegasus Grp.*, 2000-3255, p. 4 (La. 6/29/01); 791 So. 2d 1266, 1270)). Therefore, the questions before the Court with regard to each defendant are "(1) [whether] that defendant has purposefully availed himself of

the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) [whether] the exercise of jurisdiction over that defendant . . . offend[s] 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)). The potential burdens of litigation render "the minimum contacts analysis . . . particularly important when the defendant is from a different country." *Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 328 (5th Cir. 2014) (per curiam) (quoting *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)).

"Minimum contacts" may give rise to either general personal jurisdiction or specific personal jurisdiction. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). General personal jurisdiction empowers a court to hear "any and all claims" against a defendant whose contacts with the forum state are "continuous and systematic" such that the defendant is "at home" in the state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, Inc., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a natural person, general personal jurisdiction exists in her state of domicile. *Milliken v. Meyer*, 311 U.S. 457, 463–64 (1940). A defendant is also subject to suit on any matter regardless of her contacts with the forum state when she is personally served while physically present there. *Burnham v. Superior Court of Cal., Cty. of Marin*, 495 U.S. 604, 628 (1990) (plurality opinion).

Specific personal jurisdiction allows suit to proceed if the matter is related to a defendant's contacts with the forum state. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). To determine whether a court may exercise specific jurisdiction, the Fifth Circuit prescribes a three-step analysis: "(1) whether the

7

defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The contacts, while not as substantial as those required for an exercise of general jurisdiction, may not be merely "random, fortuitous, or attenuated." *Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Although the defendant's physical presence in the state is not required, *Burger King*, 471 U.S. at 476, "merely contracting with a resident of the forum state does not establish minimum contacts," *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Latshaw*, 167 F.3d at 211; *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983)). If the plaintiff successfully establishes the first two prongs, the burden shifts to the defendant to show that litigation in the forum state would be "'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to [its] opponent." *Burger King*, 471 U.S. at 478 (first quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972); then quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

## C. Jurisdiction over the Fusion Defendants

### 1. Jurisdictional Facts[5]

Hirant Manakyan, a French citizen and resident, formed ACMT S.A.R.L. ("ACMT") in 1985 to engage in athlete representation; the company was a competitor of Levy's company, 5A's, at the time of the 2005 Agreement. [Record Document 29-1 at 1, 5]. Herman Manakyan, a United

---

[5] The Court takes the jurisdictional facts regarding the Fusion Defendants and Levy from the parties' affidavits and documentary evidence as well as the nonconclusory and supported jurisdictional allegations in Ebert's First Amended Petition. *See Panda Brandywine*, 253 F.3d at 869.

States citizen and resident of Maryland, consulted for ACMT as its "Director of Scouting" from 1996 to 2012. [Record Document 29-2 at 4]. ACMT continues to exist and conduct business. [Record Document 29-1 at 3]. In December 2012, Hirant Manakyan formed Fusion, which Levy joined as an employee and minority owner after contributing €220 of capital. [*Id.* at 3, 5]. After Fusion was formed, Herman Manakyan served as an independent consultant for the company and in June 2017 acquired a small ownership interest. [Record Document 29-2 at 3]. Additionally, ACMT and the Manakyans "regularly contacted Ebert since about 2000 in Louisiana,"[6] a fact supported by a fax and several emails that Herman Manakyan sent to Ebert in 1998. [Record Documents 1-13 at 33–35 and 31 at 5].

Although Ebert alleges that Fusion was "previously known prior to 2012 as ACMT Agent Conseil en Recrutment Sportif," [Record Document 1-13 at 3], he has provided no evidence to contradict the Manakyans' affidavits that Fusion is a separate and unrelated legal entity, [Record Documents 29-1 at 5–7 and 29-2 at 3–4]. Likewise, the Manakyans' affidavits indicate that Fusion did not assume the obligations of Levy or 5A's when Levy joined the company. [Record Documents 29-1 at 7 and 29-2 at 4]. Moreover, although Ebert conclusorily alleges that Fusion was "doing business in the State of Louisiana," [Record Document 1-13 at 3], he has presented no evidence to counter Hirant Manakyan's affidavits that "Fusion Sports does not, and has not, conducted any business in Louisiana," that it has "no office, employees, contractors, or property in Louisiana," that it "offers no goods in Louisiana," and that its only contact with Louisiana was hiring counsel in the

---

[6] The Fusion Defendants object to the Court's consideration of this fact because it is insufficiently precise and because it appears in Ebert's affidavit following the statement "FURTHER AFFIANT SAYETH NOT" and the signatures of Ebert and the notary. [Record Document 32 at 3]. Because the Court finds that Ebert has not established his prima facie case even with the use of this fact, the Court declines to decide whether the fact is admissible.

instant case, [Record Documents 1-6 at 12 and 29-1 at 3].[7]

Even if Ebert had alleged sufficient facts connecting Fusion to Louisiana, he has failed to adequately support his conclusory allegation that the Manakyans are "doing business as" Fusion. [Record Document 1-13 at 2–3]. The only evidence that could possibly support this claim is the Manakyans' ownership interests in Fusion, but as Fusion is a limited liability entity, these ownerships interests are insufficient, without more, to state a plausible allegation that Fusion is their alter ego. *See Dykes v. Maverick Motion Picture Grp., LLC*, No. CIV.A. 08-536-JJB-CN, 2011 WL 900276, at *7 (M.D. La. Mar. 14, 2011) (refusing to accept alter ego allegations as jurisdictional facts when the allegations "merely recite the factors which courts consider in determining whether to pierce the corporate veil without providing even a modicum of specific facts"); *Warrior Energy Servs. Corp. v. Wellmaster Consulting, Inc.*, No. 09-CV-1600, 2010 WL 2710631, at *1 (W.D. La. June 10, 2010) (declining to accept an alter ego allegation as a jurisdictional fact when controverted by a CEO's affidavit that the companies at issue were "separate and distinct"), *report and recommendation adopted*, No. 09-CV-1600, 2010 WL 2719824 (W.D. La. July 7, 2010); *see also Stuart*, 772 F.2d at 1197 ("[A]n individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation . . . .").

Finally, Ebert's RICO claims involving the Fusion Defendants concern his allegations that they filed false affidavits in state court. [Record Document 22 at 13].[8] A court filing is not a consent

---

[7] Although Ebert has alleged that Fusion recruited Spann, Smith, and Moss from Ebert while he was in Louisiana, [Record Document 1-13 at 4], he has provided no evidence to counter the Manakyans' affidavits that Fusion did not exist in 2005, *see Sealed Appellant 1*, 625 F. App'x at 631 (crediting only nonconclusory and supported allegations)

[8] In addition, Ebert has alleged contact between Levy, Herman Manakyan, Christos Stavroupolos, and Panagiotis Angelopoulos, but has failed to allege any relationship between this

10

to jurisdiction provided that the filer properly preserves an objection to the court's jurisdiction. *See PaineWebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453, 461 (5th Cir. 2001). As the Fusion Defendants have properly preserved their objections, their court filings are not a contact with Louisiana for jurisdictional purposes. *See id.*[9]

## 2. General Personal Jurisdiction

The residence and citizenship of the Manakyans in Maryland and France, [Record Document 1-13 at 3], allow the Court to conclude that they are not domiciled in Louisiana, *see Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798 (5th Cir. 2007) ("Domicile requires the demonstration of two factors: residence and the intention to remain."). If service was made, this did not occur within the territorial jurisdiction of Louisiana.[10] Because the Manakyans neither are domiciled in nor were served in Louisiana, the Court cannot exercise general personal jurisdiction over them. *See Burnham*, 495 U.S. at 628 (plurality opinion); *Milliken*, 311 U.S. at 463–64. Moreover, even if Ebert had supported his allegation that Fusion is "doing business in the State of Louisiana," [Record Document 1-13 at 3], merely "doing business" in a state is insufficient to enable the exercise of general jurisdiction unless the business rises to the level of "continuous and systematic" contacts that render the defendant "at home," *Daimler AG*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 919). Ebert has provided no evidence or even clear allegations that Fusion

---

contact and the state of Louisiana. [Record Document 22 at 16].

[9] To the extent that Ebert alleges that other materials such as "instructions, correspondence, letters, and other items related to the Ebert vs. Levy 5'A's [sic] and Fusion Sport SARL law suit" are grounds for jurisdiction, [Record Document 1-13 at 10], this argument fails because Levy has not alleged that any of these materials were sent by the Fusion Defendants into Louisiana.

[10] Although the state court denied Fusion's exception of insufficient service of process, [Record Document 7-2 at 2], the parties continue to dispute whether service was proper, [Record Documents 1-13 at 8–9 and 7-1 at 25–26].

11

has such extensive contacts with Louisiana. As a result, the Court cannot exercise general jurisdiction over Fusion.

### 3. Specific Personal Jurisdiction

The sole contact for which Ebert offers nonconclusory and supported allegations is that ACMT and the Manakyans regularly contacted him in Louisiana regarding potential business deals. [Record Documents 1-13 at 9 and 31 at 5]. Even assuming that this constitutes "minimum contacts," Ebert has not alleged any relationship between these interactions and the 2005 Agreement. Because Ebert's cause of action against the Fusion Defendants arises out of the 2005 Agreement and its alleged breach, the Fusion Defendants' unrelated contacts with Louisiana do not establish this Court's personal jurisdiction, even if those contacts also involve Ebert. Because Ebert's allegations do not satisfy the second prong of the specific jurisdiction test, the Court need not consider whether the exercise of jurisdiction is fair and reasonable. *See Moncrief Oil*, 481 F.3d at 314–15. Therefore, the Court finds that Ebert has not established a prima facie case for this Court's personal jurisdiction over the Fusion Defendants.

### D. Jurisdiction over Levy

#### 1. Jurisdictional Facts

Levy is a resident and citizen of France. [Record Document 30 at 1]. The 2005 Agreement was negotiated via "phone calls, faxes, e-mails, and other electronic means." [*Id.*]. Pursuant to the agreement, Levy cooperated with Ebert to secure the Players' contracts with French basketball clubs; Ebert approved these contracts from Louisiana. [Record Documents 30 at 1–2 and 31 at 2]. Levy did not have any direct contact with the Players until their arrival in France. [Record Document 30 at 2]. Levy made a partial payment of Ebert's share of the agency fees for Moss in

12

March or April 2006 and "on numerous occasions in writing admitted he owes the money in question . . . in this legal action." [Record Document 31 at 2–3]. Finally, Levy has no property or bank accounts in the United States. [Record Document 30 at 1].

### 2. General Personal Jurisdiction

Levy resides in France and is a citizen of France. [Record Documents 1-13 at 2 and 30 at 1]. Therefore, the Court can conclude that he is not domiciled in Louisiana. *See Preston*, 485 F.3d at 798. Although the parties dispute whether Levy has been properly served,[11] if service was proper, it also occurred in France. [Record Documents 9-1 at 13–14, 11 at 2, and 13 at 4]. Therefore, the Court does not have general jurisdiction over him. *See Burnham*, 495 U.S. at 628 (plurality opinion); *Milliken*, 311 U.S. at 463–64.

### 3. Specific Personal Jurisdiction[12]

The Fifth Circuit has identified a number of factors the balance of which determines whether minimum contacts exist with the forum state in a suit arising out of a contract dispute:

> where the contract was formed, where it would be performed, whether the plaintiff's business is conducted solely in the forum, the hub of the parties' activity, where payments under the contract were tendered, any choice of law provision in the contract, and the foreseeability that a material part of the obligations under the contract would be performed in the forum.

*Special Indus.*, 578 F. App'x at 331 (citing *Moncrief Oil*, 481 F.3d at 312–13). Notably, however,

> the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the

---

[11] The state court ruled that service was proper on Levy. [Record Document 9-1 at 17–18].

[12] For the reasons discussed above in reference to the Fusion Defendants, Ebert's RICO allegations do not establish personal jurisdiction over Levy because they either involve conduct that is not directed toward Louisiana or conduct involved in defending the instant suit.

exercise of specific personal jurisdiction over the nonresident defendant.

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Stuart*, 772 F.2d at 1192–94).

Ebert has not alleged and other information before the Court does not clarify where the 2005 Agreement was formed or which party initiated its formation. Because negotiations took place at a distance, Ebert's presence in Louisiana during the formation of the agreement does not enable this Court to exercise jurisdiction over Levy. *See First Metro. Church of Hous. v. Genesis Grp.*, 616 F. App'x 148, 149 (5th Cir. 2015) (per curiam) ("Negotiating and closing a contract with a forum resident by sending communications into the forum state is insufficient to establish specific personal jurisdiction for a breach of contract claim . . . ."). Similarly, the fact that Levy communicated with Ebert in Louisiana during the term of the 2005 Agreement is merely the fortuitous result of Ebert's presence and does not demonstrate Levy's intention to purposefully avail himself of the benefits and protections of the laws of Louisiana. *See Freudensprung*, 379 F.3d at 344.

Ebert appears to argue that Levy knew that Ebert was located in Louisiana and thus could foresee that Ebert would perform his obligations under the 2005 Agreement from within Louisiana. [Record Document 1-13 at 4–6]. While a defendant who acts "with the foreseeable and intended result of causing economic activity within the forum state" subjects herself to the jurisdiction of the forum state's courts, *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 386 (5th Cir. 2003), "[m]ere foreseeability, standing alone, does not create jurisdiction," *Moncrief Oil*, 481 F.3d at 313. It is unclear from the record if Levy was aware at the time of the 2005 Agreement that Ebert and the Players were in Louisiana. Although Ebert argues that jurisdiction is proper because Levy "recruit[ed]" the Players from Ebert, [Record Document 18 at 2], he does not allege that Levy had

14

any interactions with them while they were in Louisiana. Indeed, Levy specifically disclaims having had any contact with the Players before their arrival in France. [Record Document 30 at 2].

The work of identifying French teams to hire Ebert's clients was to be performed in France by Levy; this fact weighs against this Court's exercise of personal jurisdiction. *See First Metro. Church*, 616 F. App'x at 149 (finding no personal jurisdiction where the contract did not specify that the defendant would perform its work in the forum state). Because Ebert's role was apparently limited to approving the Players' contracts, it is unclear how the 2005 Agreement would "cause business activity" in Louisiana. *Moncrief Oil*, 481 F.3d at 313. Likewise, because the 2005 Agreement did not require Ebert to perform his obligations from within Louisiana, any contact deriving from his approval of the Players' contracts results "only from the fortuity of [his] residence." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009); *see Trois v. Apple Tree Auction Ctr., Inc.*, No. 16-51414, 2018 WL 706517, at *2 n.2 (5th Cir. Feb. 5, 2018) (noting that "partial performance by [the plaintiff] in [the forum state] is insufficient to establish jurisdiction"). Additionally, as the object of the 2005 Agreement was placing the Players on French basketball teams and was to be accomplished through Levy's contacts in France, the "'hub' of the parties' activities" under the agreement was France, not Louisiana. *McFadin*, 587 F.3d at 760–61 (quoting *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1011 (5th Cir. 1982)) (finding no personal jurisdiction in Texas over Colorado defendant where Texas plaintiffs approached the defendant in Colorado and the purpose of the contract was to expand the plaintiffs' operations outside of Texas). Finally, because Ebert styles himself as an "International Basketball Agent," [Record Document 31 at 2], his business is, of necessity, not conducted solely in Louisiana.[13]

---

[13] Although Levy and Ebert claim that certain forum-selection clauses are dispositive of the issue of personal jurisdiction, [Record Documents 1-13 at 4, 11 at 2, 30 at 1–2, and 31 at 2], their

Levy remitted at least one payment under the 2005 Agreement to Ebert in Louisiana. [*Id.*].

While this one factor favors a finding of minimum contacts, *see Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1206 (5th Cir. 1993), in light of the other factors, the Court cannot find on the basis of the material before it that Ebert has carried his burden to show through nonconclusory and supported allegations that Levy has minimum contacts with Louisiana.[14]

In addition to breach of contract, Ebert has alleged a breach of fiduciary duty, detrimental reliance, conversion, and tort fraud. [Record Document 1-13 at 11–14]. Although the Fifth Circuit separates the jurisdictional analysis of contract claims from that of tort claims, *see, e.g., McFadin v. Gerber*, 587 F.3d 753, 761–62 (5th Cir. 2009), this is not required where non-contract claims are "essentially a restatement of [a] breach of contract claim," *First Metro. Church*, 616 F. App'x at

---

positions are incorrect. Forum-selection provisions found in contracts between Ebert and Smith and between Smith and Spann and their French teams do not illuminate whether the circumstances of the 2005 Agreement constitute minimum contacts with Louisiana. Similarly, although Levy "understood that French law would apply to our agreement," [Record Document 30 at 1], this statement appears to refer to Levy's belief regarding the appropriate outcome of a conflicts of law analysis rather than to a negotiated term of the 2005 Agreement.

[14] Ebert has alleged two other potential contacts: Levy has placed other clients at "Junior colleges, Prep school and Universities across the United States" and Levy represented Harold Disy ("Disy"), a French citizen who played basketball for Louisiana Tech University. [Record Documents 1-13 at 4–5, 30 at 2–3 and 31 at 4]. Although Ebert has alleged that Levy reached out to contact Disy while Disy was in Louisiana, [Record Documents 1-13 at 5 and 31 at 4], Levy has provided authentic evidence demonstrating that he was not Disy's agent during his first post-college basketball season, [Record Document 30 at 2–3, 24]. Ebert has responded with a hearsay statement: "I reached out to Harry Disy who informed me Pascal Levy was his first agent from Louisiana Tech." [Record Document 31 at 4]. Because hearsay is not admissible evidence, this statement is insufficient to controvert Levy's affidavit. *See Sealed Appellant 1*, 625 F. App'x at 631 (citing *Cooper v. McDermott Int'l Inc.*, No. 93-2907, 1995 WL 450209, at *5 (5th Cir. July 6, 1995)). Moreover, even if the Court could consider Ebert's assertion that Levy reached out to Disy while Disy was in Louisiana and even if the Court were to accept the doubtful proposition that contact with Disy and placement of players at institutions across the United States establish Levy's minimum contacts with Louisiana, these contacts are unrelated to the 2005 Agreement. Hence, they provide no basis for this Court to exercise specific personal jurisdiction over Levy.

149. Here, the factual predicate for Ebert's non-contract claims is Levy's failure to pay monies allegedly due under the 2005 Agreement. Hence, these claims merely restate the breach of contract claim and so do not require separate analysis.

Even if Ebert's non-contract claims require their own analysis, his allegations do not establish Levy's minimum contacts with Louisiana. Ebert conclusorily alleges that Levy "breached his fiduciary duty owed to Plaintiff by making material misrepresentations and omissions, by failing to disclose material facts regarding the status of funds collected from the three contracts, and by placing Defendants' interests ahead of the interests of the Plaintiff." [Record Document 1-13 at 12]. Although personal jurisdiction exists when the "actual content of communications with a forum gives rise to [an] intentional tort," *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999), Ebert has specifically alleged neither what misrepresentations Levy made nor whether those misrepresentations occurred during a communication from Levy to Ebert while the latter was in Louisiana. In fact, it appears the "fraud" that Ebert believes has been committed is Levy's alleged failure to comply with the 2005 Agreement. [Record Document 1-13 at 12]. As a result, the Court cannot find that Ebert has stated a prima facie case for Levy's minimum contacts with Louisiana for the non-contract claims.

Because Ebert has established minimum contacts on neither the contract claim nor the non-contracts claims, the Court need not analyze the remaining two prongs of the specific personal jurisdiction test. *See Moncrief Oil*, 481 F.3d at 314–15. The Court concludes, based on the evidence before it, that Ebert has not established a prima facie case for specific personal jurisdiction over Levy.

### E. Effect of Ebert's RICO Claims

RICO provides for nationwide service of process. 18 U.S.C. § 1965(b) (2012). To exercise personal jurisdiction over a nonresident RICO defendant, a district court "must have personal jurisdiction over at least one defendant" and the exercise of jurisdiction over the remaining defendants must serve "the ends of justice." *Farmer v. D & O Contractors, Inc.*, 40 F. Supp. 3d 793, 798 (N.D. Miss. 2014) (citing 18 U.S.C. § 1965(b)); *see also Caldwell*, 811 F.2d at 918 (noting that an exercise of personal jurisdiction on the basis of RICO's nationwide service of process likely requires that a defendant "conduct[] business in the forum"). For the reasons discussed above, this Court cannot, on the basis of Ebert's showing, exercise personal jurisdiction over Defendants. Therefore, RICO does not enable this Court to exercise jurisdiction over Herman Manakyan in Maryland.

Although RICO itself does not authorize service on foreign defendants, *see, e.g.*, *Skidmore Energy, Inc. v. KPMG*, No. CIV.A. 3:03-CV-2138-B, 2004 WL 2008514, at *7 (N.D. Tex. Sept. 3, 2004), service may be made on foreign RICO defendants pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, *see, e.g.*, *Grynberg v. BP P.L.C.*, 855 F. Supp. 2d 625, 643–47 (S.D. Tex. 2012), *aff'd on other grounds*, 527 F. App'x 278 (5th Cir. 2013) (per curiam). Rule 4(k)(2) authorizes jurisdiction over a foreign defendant for a claim arising under federal law when (1) the defendant "is not subject to jurisdiction in any state's courts of general jurisdiction;" and (2) "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) creates jurisdiction "when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." *World Tanker*

*Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996). Herman Manakyan is a United States citizen residing in Maryland, [Record Document 1-13 at 3], and therefore is subject to the general jurisdiction of his state of domicile, *see Milliken*, 311 U.S. at 463–64. Hence, Rule 4(k)(2) can only apply to Hirant Manakyan, Fusion, and Levy.

Even assuming that no state can exercise jurisdiction over Levy, Hirant Manakyan, and Fusion, Ebert's allegations do not establish a prima facie case for this Court's jurisdiction. Determining whether the exercise of jurisdiction is constitutionally permissible under Rule 4(k)(2) requires deploying the minimum contacts analysis. *See De Leon v. Shih Wei Navigation Co.*, 269 F. App'x 487, 489 (5th Cir. 2008) (per curiam). Thus, a defendant to be haled into court under this provision must have minimum contacts with the United States as a whole such that federal courts can exercise either general or specific jurisdiction without offending notions of fair play and substantial justice. *Id.* While Ebert's allegations may support a finding that Levy, Hirant Manakyan, and Fusion conduct business in the United States, the allegations fail to establish that this business is so "continuous and systematic" as to render these defendants "at home" here, *see Daimler AG*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 919); thus, a federal court cannot exercise general personal jurisdiction over them. Although Ebert has alleged that these defendants have contacts with the United States involving players other than Smith, Spann, and Moss, [Record Document 1-13 at 4, 9–10], these contacts are unrelated to the formation, performance, or alleged breach of the 2005 Agreement. As a result, these contacts do not authorize this Court to exercise specific personal jurisdiction over the claims at issue. *See Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 420–21 (5th Cir. 2001). Therefore, neither RICO's service of process

provision nor Rule 4(k)(2) assist Ebert in establishing this Court's personal jurisdiction over Defendants.

### F. Additional Grounds for Dismissal

In addition to personal jurisdiction, the Fusion Defendants seek dismissal because Ebert has failed to state a claim and on the grounds of insufficient process and insufficient service of process. [Record Document 7]. Likewise, Levy argues that he was not properly served and that Ebert's claims are prescribed. [Record Document 11]. As the Court has found that it cannot exercise personal jurisdiction over Defendants on the basis of Ebert's present showing, the Court declines to consider these additional grounds for dismissal.

## III. Conclusion

In light of the foregoing, the motions to dismiss [Record Documents 7 and 11] are **GRANTED** because Ebert has not carried his burden to establish a prima facie case for this Court's personal jurisdiction over Defendants. The motion to disqualify counsel [Record Document 13] is **DENIED AS MOOT**.

**IT IS ORDERED, ADJUDGED, and DECREED** that Ebert's claims are **DISMISSED WITHOUT PREJUDICE**. A judgment consistent with the instant memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 15th day of February, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE